1

2

3                                                    O

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                          )
                            )
11  UNITED STATES OF        )   Case Nos. **EDCV 15-00789-VAP**
    AMERICA,                )             EDCR 10-00058-VAP
12                          )
    Plaintiff/Respondent,   )   **ORDER DENYING MOTION FOR**
13                          )   **RELIEF UNDER 28 U.S.C.**
         v.                 )   **§ 2255**
14                          )
    CHRISTOPHER HENRY       )   **[Motion filed on April 22,**
15  LISTER, SR.,            )   **2015]**
                            )
16  Defendant/Petitioner.   )
    _____)

17

18

19              **I. SUMMARY OF PROCEEDINGS**

20      On April 22, 2015, Christopher Henry Lister, Sr.

21  ("Petitioner")[1] filed a "Motion to Vacate, Set Aside or

22  Correct Sentence by a Person in Federal Custody" pursuant

23  to 28 U.S.C. § 2255 ("Petition" or "Pet."). ([Crim.] Doc.

24

25  _____

26      [1]   Though the Judicial Code describes § 2255
    petitions as "motions," the Court uses the terms
27  "petition" and "petitioner" for ease of reference. <u>See</u>
    <u>United States v. Howard</u>, 381 F.3d 873, 877 n.4 (9th Cir.
28  2004).

No. 211; [Civ.] Doc. No. 1)[2].  On June 12, 2015, the
United States filed an Opposition ("Opp'n") to the
Petition.  ([Crim.] Doc. No. 215.)  Petitioner filed a
Reply to the Government's Opposition on June 29, 2015.
([Crim.] Doc. No. 216; [Civ.] Doc. No. 10.)  Petitioner
also filed, on August 24, 2015 a "Motion for Summary
Judgment," to which the Court did not require the
Government to respond.  For the reasons stated below, the
Court DENIES the Petition.[3]

**II. BACKGROUND**

On November 16, 2012, Petitioner pled guilty to Count
One of the Indictment, conspiracy to distribute and
dispense oxycodone, in violation of 21 U.S.C. §§ 846,
841(a), and 841(b)(1)(C).  (Minutes of Change of Plea
Hearing ([Crim.] Doc. No. 135) at 1; Plea Agreement
([Crim.] Doc. No. 132) at 3).)  Petitioner entered his

_____

   [2]    Some of the documents referenced in this Order
appear only on the docket in the underlying criminal
case, EDCR 10-00058-VAP-3.  Citations to [Civ.] indicate
documents on the docket for the Petition.  Citations to
[Crim.] indicate documents on the docket for the
underlying criminal case.

   [3]    Petitioner's "Motion for Summary Judgment" is
also DENIED.

2

1  guilty plea pursuant to a written plea agreement.[4]   (See
2  Plea Agreement.)

3

4       On April 16, 2013, the Court sentenced Petitioner to
5  a 168 month term of imprisonment.  (J & Commitment Order
6  ([Crim.] Doc. No. 163).)  The term consisted of 156
7  months on Count One of the Indictment and 12 months on
8  the enhancement under 18 U.S.C. § 3147, to be served
9  consecutively.  (Id.)  Petitioner was also sentenced to a
10 three year term of supervised release.  (Id.)

11

12      Petitioner filed a notice of appeal, challenging his
13 conviction and sentence on April 26, 2013.  ([Crim.] Doc.
14 No. 164.)  The Ninth Circuit denied Petitioner's appeal
15 on January 9, 2015, in United States v. Lister, 596 F.
16 App'x 553 (9th Cir. 2015).  ([Crim.] Doc. No. 210.)
17 Affirming the district court, the Ninth Circuit held: (1)
18 that Lister had not shown that the Government had
19 committed a Brady violation; (2) that he was not entitled
20 to "the benefits of a recent change in the Department of
21 Justice's policy for prosecuting drug crimes"; (3) that

22 _____

23      [4]   Though the Plea Agreement contains an appellate
   waiver, claims related to ineffective assistance of
24 counsel cannot be waived.  See United States v. Pruitt,
   32 F.3d 431, 432-33 ("We doubt that a plea agreement
25 could waive a claim of ineffective assistance of counsel
   based on counsel's erroneously unprofessional inducement
26 of the defendant to plead guilty or accept a particular
   plea bargain."); Washington v. Lampert, 422 F.3d 864, 871
27 (9th Cir. 2005) (finding that waivers cannot bar
   ineffective assistance of counsel claims associated with
28 the negotiation of plea agreements).

any error in the calculation of his criminal history was harmless; and (4) that his sentence was not "substantively unreasonable." See Lister, 596 F. App'x at 553-54.  The Ninth Circuit also declined to address Petitioner's contention that his trial counsel was ineffective as the circumstances of his case were not "the rare case where a counsel's effectiveness is ripe for review on direct appeal." Id. at 554.

Lister filed the instant Petition on April 22, 2015. The Petition argues that Petitioner's counsel was ineffective at various stages of the proceedings:

(1) Before trial, for failing to complete discovery on the eve of trial, and then hastily having Petitioner sign the Plea Agreement to cover-up this unpreparedness;

(2) During Petitioner's change of plea hearing, for failing to state Petitioner's objections to the factual basis for his plea, and for not objecting when the factual basis for the plea was not read into the record; and

(3) At sentencing, (a) for failing to explain how his sentence would be calculated, (b) for failing to argue for a minor role reduction, and (c) for failing

4

1    to introduce evidence about his history and character

2    in mitigation.

3

4  (Pet. at 5; <u>see generally</u>, Reply.[5])  According to

5  Petitioner, his counsel's ineffectiveness resulted in an

6  unreasonable sentence.  (<u>Id.</u>)

7

8                    **III. LEGAL STANDARD**

9        Section 2255 authorizes the Court to "vacate, set

10  aside or correct" a sentence of a federal prisoner that

11  "was imposed in violation of the Constitution or laws of

12  the United States."  28 U.S.C. § 2255(a).  Claims for

13  relief under § 2255 must be based on some constitutional

14  error, jurisdictional defect, or an error resulting in a

15  "complete miscarriage of justice" or in a proceeding

16  "inconsistent with the rudimentary demands of fair

17  procedure."  <u>United States v. Timmreck</u>, 441 U.S. 780,

18  783-84 (1979).  If the record clearly indicates that a

19  movant does not have a claim or that he has asserted "no

20  more than conclusory allegations, unsupported by facts

21  and refuted by the record," a district court may deny a §

22  2255 motion without an evidentiary hearing.  <u>United States</u>

23  <u>v. Quan</u>, 789 F.2d 711, 715 (9th Cir. 1986); <u>see also</u>

24  <u>United States v. Chacon-Palomares</u>, 208 F.3d 1157, 1159

25

26  _____

27       [5]    When construed liberally, the Petition makes
    these arguments in summary.  The Reply is much more
    detailed, and so the Court cites to the Reply throughout
28  this Order.

                              5

1  (9th Cir. 2000) ("When a prisoner files a § 2255 motion,
2  the district court must grant an evidentiary hearing
3  '[u]nless the motion and the files and records of the
4  case conclusively show that the prisoner is entitled to
5  no relief.'" (quoting 28 U.S.C. § 2255)).

6

7                    **IV. DISCUSSION**
8  **A.   Petitioner's Claims of Ineffective Assistance of**
9  **      Counsel Are Without Merit**
10      To establish ineffective assistance of counsel, a
11  petitioner must prove: (1) "counsel's representation fell
12  below an objective standard of reasonableness," and (2)
13  there is a reasonable probability that, but for counsel's
14  errors, the result of the proceeding would have been
15  different." Strickland v. Washington, 466 U.S. 668,688,
16  694 (1984).  The "likelihood of a different result must
17  be substantial, not just conceivable." Harrington v.
18  Richter, 562 U.S. 86, 112 (2011).

19

20      Criminal defendants are entitled to competent
21  representation in plea negotiations. Lafler v. Cooper,
22  132 S. Ct. 1376, 1384 (2012) ("During plea negotiations
23  defendants are 'entitled to the effective assistance of
24  competent counsel.' (citation omitted).)  In evaluating
25  whether a petitioner's trial counsel was ineffective in
26  this context, the petitioner must show "that there is a
27  reasonable probability that, but for counsel's errors,
28

1  [the defendant] would not have pleaded guilty and would
2  have insisted on going to trial." Id. at 1384-85
3  (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)
4  (alteration in original)).

5

6     **1.  Petitioner's Statements during the Change of**
7         **Plea Hearing**
8     On November 16, 2012, a change of plea hearing was
9  held in which Petitioner pled guilty to Count One of the
10 Indictment.  During that hearing, the following colloquy
11 took place:

12

13     THE COURT: Mr. Lister, was your lawyer with you when
14     you signed the written plea agreement?
15     DEFENDANT LISTER: Yes, he was, Your Honor.
16     THE COURT: And before you signed it did you discuss
17     everything that was in the plea agreement with your
18     lawyer?
19     DEFENDANT LISTER: Yes, Your Honor.  He had me read
20     the entire packet.
21     THE COURT: Did you have a -- as you read the plea
22     agreement and discussed it with him, did you have a
23     chance to ask him all of your questions about the
24     plea agreement?
25     DEFENDANT LISTER: I certainly did, Your Honor.
26     THE COURT: Did Mr. Juarez answer your questions to
27     your satisfaction?

28

1    DEFENDANT LISTER: Yes, he did.

2    THE COURT: Does the plea agreement cover everything

3    you've been told about what's happening in your case

4    and what may happen in the future?

5    DEFENDANT LISTER: Yes.

6    THE COURT: In other words, has anyone told you

7    anything about your case or made you any promises

8    about it other than what's in the plea agreement?

9    DEFENDANT LISTER: No, Your Honor.

10   ...

11   THE COURT: Has anyone promised you anything of any

12   kind in order to get you to plead guilty?

13   DEFENDANT LISTER: No, Your Honor.

14   THE COURT: Do you feel that you understand everything

15   that we've discussed here today?

16   DEFENDANT LISTER: I do, Your Honor.

17   THE COURT: And do you feel that you understand the

18   consequences to you of pleading guilty to this

19   charge?

20   DEFENDANT LISTER: I do, Your Honor.

21   THE COURT: And do you feel that you're competent and

22   able to make the decision to plead guilty?

23   DEFENDANT LISTER: Absolutely, Your Honor.

24   THE COURT: Is the decision to plead guilty entirely

25   voluntary on your part?

26   DEFENDANT LISTER: Yes, it is.

27   ...

28

1     THE COURT: All right, sir, how do you plead to Count

2     1 of the Indictment charging you with violation of

3     Title 21, United States Code, Section 846; that is,

4     conspiracy to distribute oxycodone, guilty or not

5     guilty?

6     DEFENDANT LISTER: Guilty as charged.

7     THE COURT: Are you pleading guilty because you did

8     what you're charged with in Count 1?

9     DEFENDANT LISTER: Yes, Your Honor.

10    ...

11    [The Government read the factual basis into the

12    record.]

13    THE COURT: Thank you.  [¶] Mr. Lister, do you agree

14    with the statement of facts just read into the

15    record?

16    DEFENDANT LISTER: Can I ask my attorney a question?

17    THE COURT: Certainly.

18    (Counsel and the defendant confer)

19    DEFENDANT LISTER: Sorry, Your Honor.

20    THE COURT: That's all right. So do you agree with the

21    facts just stated by counsel for the Government?

22    DEFENDANT LISTER: Yes, I agree that they conclude

23    that.

24    THE COURT: Do you agree they can prove all those

25    facts beyond a reasonable doubt?

26    DEFENDANT LISTER: Yes, Your Honor.

27

28

1    THE COURT: Was there anything that was stated by the
2    attorney for the Government that you object to or
3    disagree with?
4    DEFENDANT LISTER: No, Your Honor.
5    THE COURT: Thank you.
6    ...
7    THE COURT: . . . Mr. Lister, do you feel that you've
8    had enough time to discuss your case in general and
9    your decision to plead guilty with your lawyer?
10   DEFENDANT LISTER: I do, Your Honor.
11   THE COURT: Are you satisfied that your attorney has
12   fully considered any defenses that you might have to
13   these charges?
14   DEFENDANT LISTER: I am.
15   THE COURT: Are you satisfied with the representation
16   that your attorney has provided you and the advice
17   that he's given you?
18   DEFENDANT LISTER: I am, Your Honor.
19
20   (See November 16, 2012 Transcript ("Nov. 16 Tr.")
21   ([Crim.] Doc. No. 186) 5-29.)
22
23        **2.   The Signing of the Plea Agreement and Counsel's**
24             **Alleged Inadequate Preparation for Trial**
25        Petitioner argues that his trial counsel was
26   ineffective because: (1) trial counsel had Petitioner
27   sign the Plea Agreement hastily to cover up his own
28

10

1  unpreparedness and (2) trial counsel had not completed

2  discovery near the time of trial and admitted as much on

3  the record.  (Reply at 5-7.)  Neither of these arguments

4  has merit.

5

6         **a.   The Circumstances Surrounding the Signing of**

7              **the Plea Agreement**

8         First, Petitioner alleges that trial counsel induced

9  him to sign the Plea Agreement because counsel had an

10  "overburdened case load."  (Reply at 5.)  He goes on to

11  aver that once the Court refused to grant any further

12  continuances, trial counsel hastily arranged a meeting at

13  a McDonald's restaurant to discuss and sign the Plea

14  Agreement.  (Id.)  According to Petitioner, "the meeting

15  lasted all of 10 minutes, without any real explanation of

16  the process or what to expect with a plea agreement."

17  (Id.)  Petitioner asserts that his trial counsel was

18  eager to get him to sign the Plea Agreement to "cover-up

19  his poor preparation for trial . . . ."  (Pet. at 5.)

20

21         These contentions are belied by the record,

22  specifically Petitioner's statements made under oath

23  during the change of plea hearing.  "[A] Petitioner's

24  statements at the plea colloquy carry a strong

25  presumption of truth." Muth v. Fondren, 676 F.3d 815, 821

26  (9th Cir. 2012), as amended (May 31, 2012); see also

27  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("[T]he

28

representations of the defendant [at a change of plea
hearing] . . . constitute a formidable barrier in any
subsequent collateral proceedings.  Solemn declarations
in open court carry a strong presumption of verity.");
United States v. Ross, 511 F.3d 1233, 1236 (9th Cir.
2008) ("Statements made by a defendant during a guilty
plea hearing carry a strong presumption of veracity in
subsequent proceedings attacking the plea.").  Moreover,
the Ninth Circuit has also agreed with the general
principle that, to the extent a petitioner rests a
collateral challenge on allegations that directly
contradict the petitioner's statement, those arguments
must fail.  See Muth, 676 F.3d at 821-22 (citing cases).

Taking these principle into consideration,
Petitioner's claim that his trial counsel was ineffective
for failing to explain the Plea Agreement adequately must
fail.  Though Petitioner now protests that his counsel
was ineffective for failing to give "any real explanation
of the process or what to expect with the plea
agreement," Petitioner stated under penalty of perjury
during the plea colloquy that he was satisfied with trial
counsel's representation overall and that he had had
enough time to discuss his case and his decision to plead
guilty with his counsel.  (See Nov. 16 Tr. at 28:21-
29:6.)  As this allegation directly conflicts with

12

1  Petitioner's statements made during the plea colloquy the
2  Court finds that this argument fails.

3

4          b.    The State of Discovery at the Pretrial
5                Conference
6          Petitioner also claims that two weeks before trial
7  his counsel admitted on the record that he had not
8  completed discovery, further buoying his claim that his
9  counsel was unprepared for trial and pressured Petitioner
10 to sign the Plea Agreement.  (Reply at 6.)  Petitioner
11 avers that this admission was made during the pretrial
12 conference held on November 13, 2012.  (See [Crim.] Doc.
13 No. 133.)

14

15         During the pretrial conference, Petitioner's trial
16 counsel requested a brief continuance of the *pretrial*
17 *conference* in order to resolve a single outstanding
18 discovery issue.  (See November 13, 2012 Transcript
19 ([Crim.] Doc. No. 185) at 3:18-4:13.)  Counsel for
20 Petitioner did not request a continuance of the trial.
21 (Id. at 4:12-13.)

22

23         Petitioner's counsel explained that an outstanding
24 discovery issue related to the inability of Government
25 counsel to locate a Delegation of Services Agreement
26 ("DSA") between Petitioner and a Dr. Meyers.  (Id. at
27 3:18-4:4, 7:4-19.)  Despite searching, Petitioner's
28

13

counsel could not locate a DSA between Petitioner and Dr. Meyers for the period of 2008 through 2009, and wanted additional time to search.  (Id. at 7:10-17.)  For their part, counsel for the Government argued that a DSA from 2008 through 2009 "does not appear to be referenced in any of the discovery that either of the parties have, and to the best of the Government's knowledge has never been acknowledged to exist."  (Id. at 6:19-23.)  The Government reiterated that it did "not necessarily agree that what [defense counsel was] looking for exist[ed]." (Id. at 6:23-25.)

As an exhibit to his Reply, Petitioner attached a document that appears to be the missing DSA from 2008. (See Reply Ex. 1)  Petitioner states that he received this document through a Freedom of Information Act request.  (Reply at 4.)  The existence of this document is not, by itself, grounds for granting Petitioner the relief he seeks.

First, defense counsel's statement at the pretrial conference that there was one outstanding discovery issue does not support the conclusion his representation fell below an objective standard of reasonableness.  As explained by Government counsel at the pretrial conference, over 24,000 pages of discovery were produced in anticipation of trial and the Government did not

14

acknowledge that the 2008 DSA existed.  Trial counsel's
inability to find this single document — and his
corresponding request for a brief continuance of the
pretrial conference to search for it — did not fall below
an objective standard of reasonableness.

Moreover, even assuming counsel's representation did
fall below an objective standard of reasonableness
because of his failure to discover the 2008 DSA by the
November 13, 2012 hearing, Petitioner has not shown that
he was prejudiced.  Petitioner pled guilty to Count One
of the Indictment and admitted that he was a participant
in a conspiracy to distribute oxycodone.  The fact that
he might have also distributed oxycodone lawfully under
the DSA at the time of the conspiracy is not exculpatory.

Additionally, Petitioner was well aware of his
counsel's inability to locate the 2008 DSA (and the
Government's contention that it did not exist) at the
time he pled guilty.  Rather than insisting that his
counsel obtain this document before entering his plea, he
pled guilty three days later.  Thus, Petitioner has not
shown that he has suffered prejudice from his counsel's
inability to locate the 2008 DSA.  Accordingly,
Petitioner has not shown that his counsel was ineffective
with respect to the discovery of the 2008 DSA.

### 3.   The Factual Basis for the Plea Agreement

Petitioner also contends he "was not aware of the nature and circumstances of the factual basis the Court applied to his guilty plea." (Reply at 3.)  He faults his counsel for failing to object and allowing the Court to accept the factual basis of his plea to Count One of the Indictment.  (<u>Id.</u> ("[T]he Court accepted the guilty plea as to the factual [basis] of count 1 of the indictment that his counsel also should have objected [to] and did not.").)

Separately, he contends that he "did not know that the Court took the plea to mean that the Defendant agreed to the indictment's description of stipulated facts nor did his counselor inform him of those stipulated facts." (<u>Id.</u> at 3-4.)  Moreover, Petitioner maintains that "the prosecution failed to point out that the plea agreement did not spell out the factual basis [of] count 1 of the indictment to the Court . . . .  The record clearly shows that the factual basis of count 1 in the indictment was **NOT READ** in the change of plea hearing." (<u>Id.</u> at 4.)

Again, these contentions are belied by the record of the change of plea hearing, including Petitioner's own statements at the hearing, as well as the text of the Plea Agreement.

1      First, Petitioner is incorrect that the Plea
2 Agreement did not contain the factual basis to which he
3 would plead guilty.   Paragraph 10 of the Plea Agreement
4 states

5

6      Defendant and the USAO agree to the statement of
7      facts provided below.   Defendant and the USAO
8      agree that this statement of facts is sufficient
9      to support a plea of guilty to the charge
10     described in this agreement and to establish the
11     Sentencing Guidelines factors set forth below
12     but is not meant to be a complete recitation of
13     all facts relevant to the underlying criminal
14     conduct or all facts known to either party that
15     relate to that conduct.

16

17     At all times relevant to this case, defendant
18     LISTER was a Physician Assistant ("P.A.")
19     licensed in the state of California.   As such,
20     defendant could conduct medical exams and write
21     prescriptions if he was acting under the
22     supervision of a licensed physician.   Defendant
23     did business in San Bernardino County as
24     Lister's Mobile Health Services.

25

26     On June 16, 2009, a Drug Enforcement
27     Administration ("DEA") agent, acting in an

28

undercover capacity, purchased a prescription
for oxycodone from co-defendant Cherish Amber
DICKERSON.  The prescription was written by
defendant.  DICKERSON told the agent to give her
his personal information for the prescription.
The agent asked DICKERSON if it was okay to put
a fake address on the prescription.  DICKERSON
stated that it didn't matter.  DICKERSON asked
the agent, "There's nothing really wrong with
you, right?"  The agent told DICKERSON there was
nothing wrong with him.  The agent gave
DICKERSON the information she requested.
DICKERSON then gave the agent's information to
defendant, who wrote a prescription in the name
given by the agent (initials B.L.) for a
quantity of 60 pills, each containing 80mg of
oxycodone.

Later that day, DICKERSON met the agent at a
Rite Aid parking lot in Hesperia, California.
DICKERSON sold the prescription to the agent for
$300. The agent asked DICKERSON how many
prescriptions he could obtain if he just gave
her names of people to put on the prescriptions.
DICKERSON replied "as many as you want."
DICKERSON told the agent that if he ordered a
lot of prescriptions, she could get them for

$250.00 each.  DICKERSON said that when she
brings the "doctor" (defendant LISTER) a lot of
patients, LISTER gives her some prescriptions
for free.

On June 25, 2009, the DEA agent purchased four
more prescriptions from DICKERSON.  DICKERSON
told the agent that she was paying the doctor
$350 for each prescription.  DICKERSON asked the
agent if he had everything written down for her
(names and identifying information to fill out
the prescriptions).  DICKERSON told the agent to
have legitimate injuries written on the paper,
and to not just say "sore back."  DICKERSON
suggested the agent write compression fracture
of the L3, L4, and L5, and to put motorcycle
accident.

DICKERSON told the agent to write down fake
social security numbers and to write down the
physical description of the person.  The agent
later met DICKERSON and gave the written
information and $1,400 to DICKERSON.  DICKERSON
then drove to defendant's business (Lister's
Mobile Health Services) in Hesperia, California.
DICKERSON gave the written information to
defendant, who wrote four prescriptions for

oxycodone in the names provided by the UC agent
(initials M.G., A.A., A.W., and R.R.).
DICKERSON then left defendant's office and
returned to the agent. DICKERSON gave the agent
four prescriptions for a total quantity of 240,
80mg OxyContin (oxycodone) tablets.

On June 24, 2009, and July 22, 2009, defendant
wrote prescriptions in co-defendant Mark Robert
WILKES' name for a total quantity of 180 tablets
of 80 mg oxycodone.  WILKES obtained the
oxycodone for the purpose of selling it.
Defendant was aware that WILKES sold oxycodone
and did not perform any physical examination of
WILKES prior to writing the prescriptions.

On October 8, 2009, defendant sold WILKES four
prescriptions for oxycodone in various names.
The meeting was recorded on audio and video.
WILKES paid defendant $750 for the
prescriptions.  Defendant discussed the fact
that he would be stopping his practice soon and
that there would be a shortage of prescriptions,
so prices would increase. Defendant advised
WILKES to "stockpile" and raise his (WILKES')
prices.  Defendant asked WILKES to bring him
(LISTER) more business before the end of the

1    week.  Defendant told WILKES that if WILKES came

2    up with a list of names, he (LISTER) would put

3    refills on them for a six-month supply.

4    Defendant did not conduct any physical

5    examination of WILKES nor did he make any

6    inquiry regarding WILKES' health.

7

8    Altogether, defendant unlawfully sold to

9    DICKERSON and WILKES several prescriptions for a

10   total of 840 pills, each containing 80mg

11   oxycodone, for a total quantity of 67,200

12   milligrams of oxycodone.  In writing the

13   prescriptions as charged in count one of the

14   indictment, defendant was acting outside the

15   usual course of professional practice and

16   without a legitimate medical purpose.

17

18  (Plea Agreement ¶ 10.)

19

20     Thus, the text of the Plea Agreement clearly set

21  forth the factual basis for Petitioner's plea of guilty

22  to Count One of the Indictment.  As noted above,

23  Petitioner stated during the change of plea hearing that

24  he "discuss[ed] everything that was in the plea agreement

25  with [his] lawyer," and "had a chance to ask [counsel]

26  all of [his] questions about the plea agreement."  (Nov.

27  16 Tr. at 5:7-14.)  Moreover, he stated that he had a

28

1  chance to read the Indictment with his attorney, he
2  discussed it thoroughly with his attorney, he understood
3  exactly what he was charged with, and was pleading guilty
4  because he did was he was charged with in Count 1 of the
5  indictment.  (Id. at 19:6-25.)

6

7      Second, Petitioner's contention that the factual
8  basis for his plea was not read into the record is simply
9  false.  Government counsel read the factual basis for
10 Petitioner's plea into the record during the change of
11 plea hearing; it mirrors the factual basis stated in the
12 Plea Agreement, so the Court will not reproduce it here.
13 (See id. at 20:12-24:8.)  Upon Government counsel's
14 reading of the factual basis, the Court inquired of
15 Petitioner whether he agreed with the statement of facts,
16 to which he responded that he "agree[d] that they
17 conclude that," and that he agreed the Government could
18 prove all those facts beyond a reasonable doubt.  (Id. at
19 24:10-22.)  Critically, Petitioner agreed that he did not
20 object or disagree with anything stated by Government
21 counsel during the reading of the factual basis.  (Id. at
22 24:23-25:2.)

23

24     Thus, to the extent Petitioner contends that he was
25 unaware of the factual basis for his plea, or that he had
26 objections to the factual basis that were not raised,
27 these contentions are contradicted by his statements on
28

the record and the record itself.[6]  Accordingly,
Petitioner is not entitled to relief on this ground.

### 4.   Counsel's Alleged Ineffective Assistance at Sentencing

Finally, Petitioner contends his counsel was
ineffective for: (1) failing to explain the determination
of his offense level, (2) by failing to explain the
3553(a) factors or object when the 3553(a) factors were
referred to as "other factors" during the change of plea
hearing, and (3) failing to object to inadmissible
information in the Presentence Report, which was used to
determine his criminal history category.  (Reply at 3, 7-
9.)  Again, none of these claims have merit.

---

[6]   This conclusion applies equally to Petitioner's
contention that the Court's calculation of his base
offense level was too high due to the "overstated number
of pills."  (Reply at 1, 3.)  The factual basis
Petitioner agreed to in the Plea Agreement stated that he
unlawfully sold 840 pills.  (See Plea Agreement ¶ 10.)
During sentencing, the Court noted that the Probation
Office calculated Petitioner's base offense level to be
thirty-four, based on the allegation that Petitioner had
unlawfully prescribed 1,196.4 grams of oxycodone
throughout the course of the conspiracy.  (See
Presentence Report ([Crim.] Doc. No. 145) ¶¶ 30, 41.)
This was despite the parties' agreement to a base offense
level of twenty-eight, based on an agreement that
Petitioner unlawfully prescribed 67.2 grams of oxycodone.
(Plea Agreement ¶ 10; April 16, 2013 Transcript ("Apr. 16
Tr.") ([Crim.] Doc. No. 188) at 9:6-15.)  The Court
sustained Petitioner's objection to a base offense level
of thirty-four, and started its analysis with the
parties' agreed-to base offense level of twenty-eight.
(Id. at 10:7-25.)  Thus, Petitioner's sentence was based
only on the number of pills he agreed that he sold in the
Plea Agreement, i.e., 840.

### a.   Explanation of the Agreed-Upon Offense Level and the 3553(a) Factors

First, Petitioner claims that his counsel was ineffective for failing to "address or explain how the determination of [his] offense level would be used . . ." (Reply at 3.)  Moreover, Petitioner also faults his counsel for failing to explain "what [the 3553(a) factors] were, how they influence the sentence, who determined [them], etc.  They were not spelled out in the plea agreement, nor the PSR, nor did the prosecution or the probation officer."  (Id. at 7.)

The Plea Agreement contains an explanation of the factors a court is required to consider pursuant to 28 U.S.C. § 3553(a), colloquially known as the "3553(a) factors."  Paragraph 11 of the Plea Agreement states

Defendant understands that in determining defendant's sentence the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a) (1)-(7), including the kinds of sentence and sentencing range established under the Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the Sentencing Guidelines range, and that after considering the

1      Sentencing Guidelines and the other § 3553(a)

2      factors, the Court will be free to exercise its

3      discretion to impose any sentence it finds

4      appropriate up to the maximum set by statute for

5      the crime of conviction.

6

7 (Plea Agreement ¶ 11.)

8

9     During the plea colloquy, the Court asked Petitioner

10 if "[he] and his lawyer discussed the Sentencing

11 Guidelines and how they might apply in your case?"

12 Petitioner responded in the affirmative. (Nov. 16 Tr.

13 16:24-17:2.) Later in the colloquy, the Court again

14 asked Petitioner if his attorney had discussed the

15 Sentencing Guidelines and how they might apply in his

16 case; he again answered in the affirmative. (<u>Id.</u> at

17 18:7-12.) Petitioner's counsel also verified that he

18 discussed the Sentencing Guidelines and the 3553(a)

19 factors with Petitioner.[7] (<u>Id.</u> at 28:9-14.) Again, the

20 record belies Petitioner's contention that he had not

21 been informed regarding the method by which his sentence

22 would be calculated.

23

24     Even assuming Petitioner's counsel's performance fell

25 below an objective standard of reasonableness because he

26 _____

27     [7]    The transcript of the change of plea hearing in
this section refers to the "3583(a)" factors." The Court

28 assumes this is a typographical error.

failed to explain the calculation of Petitioner's base offense level and the 3553(a) factors, Petitioner has shown no prejudice.   Petitioner has not made any concrete objection to the Court's analysis of any of the 3553(a) factors at sentencing, nor has he made any showing that he would have rejected the Plea Agreement had he been informed more thoroughly about the consequences of his plea.   See <u>United States v. Jones</u>, 2015 WL 2342867, at *7 (E.D. Ky. May 14, 2015) (finding no prejudice assuming petitioner's counsel did not explain the 3553(a) factors if the petitioner had no substantive objection to the court's 3553(a) analysis).

With respect to the calculation of Petitioner's criminal history, the Plea Agreement states that the parties stipulated to a base offense level of twenty-eight, with a two level enhancement for "Abuse of Position of Trust/Use of Special Skill." (<u>Id.</u> ¶ 12.) The Government reserved the right to argue for additional enhancements under the Sentencing Guidelines. (<u>Id.</u>)   No agreement regarding Petitioner's criminal history or his appropriate criminal history category was made. (<u>Id.</u> ¶ 13.)

The Ninth Circuit found that, with respect to the calculation of Petitioner's criminal history, the Court "correctly added two criminal history points as a result"

1  of Petitioner being on probation at the time of the
2  offenses charged here.  <u>Lister</u>, 596 F. App'x at 554.  The
3  appellate court further held that even if the Court had
4  added these criminal history points in error, any error
5  was harmless.  <u>Id.</u>  Thus, Petitioner's counsel could not
6  have been ineffective for failing to raise a meritless
7  objection with respect to the calculation of his criminal
8  history.  <u>See</u> <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1273 (9th
9  Cir. 2005) <u>amended</u>, 2005 WL 1653617 (9th Cir. July 8,
10  2005).

11

12      Accordingly, the Court finds that Petitioner is not
13  entitled to relief on these grounds.

14

15          **b.  Petitioner's Ability to Read the Presentence**
16              **Report Addendum**
17      Petitioner also makes various claims complaining that
18  his trial counsel was ineffective for "not [o]bjecting to
19  the [s]entencing procedures," though the Reply is unclear
20  as to exactly how his counsel was ineffective.

21

22      For example, Petitioner claims that he never had a
23  chance to read the Probation Office's Addendum to the
24  Presentence Report, dated April 6, 2013 ([Crim.] Doc. No.
25  160).  (Reply at 8 ("Had Defendant been given the
26  opportunity to read the addendum, he would have known
27  that his objections had not been addressed . . . .").)

28

1      During the sentencing hearing, the following

2  exchange took place

3

4      THE COURT: The presentence report was disclosed

5      on January 18th and there was an addendum on

6      April the 9th.  Have you discussed the PSR with

7      your client, Mr. Juarez?

8      MR. JUAREZ: I have, Your Honor.

9      THE COURT: Mr. Lister, have you seen the

10      Probation Office's report in your case?

11      DEFENDANT LISTER: I have, Your Honor.

12      THE COURT: Have you discussed it with your

13      lawyer?

14      DEFENDANT LISTER: I have.

15

16  (See Apr. 16 Tr. at 3:18-4:2.)  The Court agrees with the

17  Government that a natural reading of this exchange

18  indicates that Petitioner had an opportunity to discuss

19  not only the Probation Office's Report but also the

20  later-filed Addendum.  (Opp'n at 24.)  Petitioner could

21  have stated at that point that he had not read the

22  Addendum, but instead said nothing.

23

24      Petitioner cites United States v. Petty, 80 F.3d 1384

25  (9th Cir. 1996), for the proposition that his counsel was

26  ineffective for failing to object when the record was not

27  clear that Petitioner had read the Addendum.  (Reply

28

1  at 8.)  Petty is distinguishable.  There, the Ninth

2  Circuit held that the trial court had violated Federal

3  Rule of Criminal Procedure 32(i)(1)(2)[8] because the "the

4  colloquy at the resentencing hearing established only

5  that Petty's counsel had received and read the two

6  memoranda, not that Petty had."  Petty, 80 F.3d at 1388.

7  As there was no "indication that Petty had read or

8  discussed either of the memoranda with counsel, and the

9  timing of the receipt of [a later memorandum] suggest[ed]

10  that he did not have the opportunity to do so," the Court

11  vacated the sentence and remanded for resentencing.  Id.

12  at 1389; see also United States v. McMillan, 15 F. App'x

13  455, 455 (9th Cir. 2001) (remanding for resentencing

14  where the Government did "not dispute that [defendant]

15  was entitled to and did not receive a copy of the

16  addendum . . . .").

17

18     Here, the Court asked both Petitioner and his counsel

19  whether they had read and discussed the Presentence

20  Report.  Petitioner agreed he had seen and discussed the

21  Presentence Report.  Even assuming Petitioner's counsel's

22  representation fell below an objective standard of

23  reasonableness by failing to object or make the record

24  absolutely clear that Petitioner had read the Presentence

25  _____

26     [8]   The requirement that the court inquire whether
the defendant had a chance to read and discuss a

27  presentence report before the sentencing hearing was
located in Federal Rule of Criminal Procedure 32(c)(3) at

28  the time Petty was decided.

1   Report and the Addendum, Petitioner has not shown
2   prejudice.

3

4        Petitioner's only claim of prejudice in allegedly not
5   reviewing the Addendum is that he was left unaware that
6   his objections to the factual basis of the indictment
7   "had not been addressed . . . ." (Reply at 8.)  As
8   discussed above, however, Petitioner agreed to the
9   factual basis for his plea agreement during his change of
10  plea hearing.  As the Government points out, had
11  Petitioner objected to this factual basis, he would have
12  been in breach of the Plea Agreement. (Opp'n at 16.)  By
13  the time of sentencing, the time to object to the factual
14  basis for a plea agreement had long since passed.  Thus,
15  to the extent Petitioner contends he was deprived of the
16  opportunity to review the Addendum, and was
17  correspondingly prejudiced because he was unable to
18  object to the factual basis of his plea, that argument
19  fails.

20

21             c.   Counsel's Failure to Introduce
22                  Mitigating Information
23        Finally, Petitioner faults his counsel for "failing
24  to introduce mitigating information" at his sentencing.
25  (Reply at 9.)  For example, he claims that he was "not an
26  organizer" and therefore "credit should have been given."
27  (Id.)

28

1      Petitioner is mistaken.  The Probation Office did not

2  recommend — and Petitioner did not receive — any

3  enhancement for being an "organizer, leader, manager, or

4  supervisor."[9]  (See Apr. 16 Tr. at 15:12-20.)  The fact

5  that Petitioner did not receive an aggravating role

6  enhancement does not automatically entitle him to a

7  decrease in the base offense level for a minor or minimal

8  role.  As explained during sentencing, the Court found

9  that Petitioner was not equally culpable with his two co-

10  defendants because "they couldn't have ever had so much

11  access to this narcotic if it weren't for [Petitioner]."

12  (Id. at 15:12-15.)  Thus, Petitioner has not shown a

13  reasonable probability that his sentence would have been

14  different had his counsel made this argument;

15  accordingly, there is no prejudice.  See Bible v. Ryan,

16  571 F.3d 860, 872 (9th Cir. 2009) (in order to show that

17  a habeas petitioner was prejudiced by counsel's failure

18  to introduce mitigating evidence, petitioner must show a

19  "reasonable probably that [his] sentence would have been

20  different."); see also McDaniel v. United States, 2009 WL

21  1106817, at *3 (N.D. Miss. Apr. 23, 2009) (reviewing the

22  record where petitioner argued that his counsel was

23  ineffective for failing to argue for a minor role

24  reduction and finding that petitioner had failed to

25  _____

26      [9]    Indeed, during the sentencing hearing the Court
noted its surprise that no such enhancement was
27  recommended, given that Petitioner was the only source of
the narcotics in this case.  (See Apr. 16 Tr. at 15:15-
28  18.)

31

1  establish a reasonable probability that his sentence
2  would have been different had counsel made that
3  argument).

4

5      Additionally, Petitioner contends his counsel was
6  ineffective for "failing to introduce" mitigation
7  information such as his long work history, as well as
8  other personal characteristics such as age, education
9  level, and strong ties to the community.  (Reply at 9.)
10 Each of these mitigating factors was discussed in
11 Petitioner's Sentencing Memorandum (see [Crim.] Doc. No.
12 150), and the Court discussed and considered Petitioner's
13 history and characteristics during sentencing (see Apr.
14 16 Tr. at 12:13-13:2).  Again, Petitioner has not shown
15 that his sentence would have been different had those
16 arguments been made, as his counsel submitted information
17 with respect to those mitigating factors and the Court
18 considered them.  Thus, Petitioner has shown no
19 prejudice.

20

21     Accordingly, as none of Petitioner's claims for
22 relief have merit, the Court DENIES the Petition, and
23 finds that no hearing is necessary.  See 28 U.S.C.
24 § 2255(b) (2255 motion can be denied without an
25 evidentiary hearing where, as here, "the motion and the
26 files and records of the case conclusively show that the
27 prisoner is entitled to no relief").

28

**B.   The Court Declines to Issue a Certificate of Appealability**

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To meet the "substantial showing" requirement of § 2253, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

As discussed above, the Court finds that Petitioner has not made a substantial showing of any violation of his constitutional rights.  Accordingly, the Court DENIES Petitioner's request for a certificate of appealability.

1

**V. CONCLUSION**

2      As all of Petitioner's claims are without merit, the

3  Court DENIES the Petition.

4

5      To the extent Petitioner has requested a certificate

6  of appealability, that request is also DENIED.

7

8

9  Dated:  September 1, 2015                    

10                         VIRGINIA A. PHILLIPS
                  United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28